United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXA PARASHOS,<br>Plaintiff,<br>v.<br>ONCE UPON A FARM,<br>Defendant. | Case No. 26-cv-00314-EMC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Docket No. 12 |

Plaintiff Alexa Parashos has filed a putative class action against Defendant Once Upon A Farm, a maker of baby food. She alleges that Defendant violated California consumer protection laws by misleadingly labeling its product as the "Wild Rumpus Avocado 'Fruit & Veggie Blend'" when in fact it contains no vegetables (but does contain avocados). Once Upon A Farm moves to dismiss on all counts.

Having considered the parties' briefs as well as the oral argument of counsel, the Court **GRANTS** Once Upon A Farm's motion to dismiss.

## I. FACTUAL & PROCEDURAL BACKGROUND

### A. Factual Background

Defendant sells organic food products for babies, including the Wild Rumpus Avocado "Fruit & Veggie Blend" pouch. Dkt. No. 1-1, (Compl.) ¶ 1. The front of this pouch displays multiple images of avocados, along with images of apples, banana, and pineapples. *Id.* at Fig. 1. The back of the pouch lists its ingredients as pineapple, banana, apple, avocado and mint. *Id.*




*Figure 1: The front label, the back label, and a close-up of the ingredients list*

Plaintiff contends that this ingredient list contains no vegetables, citing to the FDA's classification of avocados as fruit, and mint as an herb. Compl. ¶ 18-20. In other words, this so-called "Fruit & Veggie Blend" in fact contains no vegetables at all, but rather exclusively fruits (avocados, apples, bananas, and pineapples) and an herb (mint). *Id.*

Plaintiff alleges that the product's target audience is "health-conscious parents." *Id.* ¶ 28. She alleges that "[s]uch consumers are willing to pay a premium to ensure that the food that they provide to their children is nutritious and includes vegetables." *Id.* ¶ 24. Plaintiff purchased Defendant's product for her children repeatedly—from Amazon in or around November 2024 and from Target on October 31, 2024, November 1, 2024, and December 15, 2024. *Id.* ¶¶ 5, 32. She alleges that she reasonably believed that the pouch contained vegetables and would have paid less for the product or not purchased it at all had she known that it did not. *Id.* ¶ 5.

According to Plaintiff, the Defendant's advertisements and packaging were not just misleading but "literally false." *Id.* ¶ 26. Defendant knew or was reckless in not knowing that their product contained no vegetables and deliberately misrepresented the product to induce "health-conscious parents" to purchase it. *Id.* ¶¶ 26-28.

Based on the above allegations, Plaintiff asserts the following causes of action:

(1) Violation of the California Consumer Legal Remedies Act (Civ. Code §§ 1750 et seq.)

(2) Violations of the Unfair Competition Law (Bus. & Prof. Code §§ 17200 et seq.)

(3) Violation of California's False Advertising Law (Bus. & Prof. Code §§ 17500)

(4) Intentional Misrepresentation (Fraud)

(5) Negligent Misrepresentation

(6) Unjust Enrichment/Quasi-Contract

**B. Procedural Background**

Plaintiff initially filed her class action complaint in the Superior Court for the State of California, County of Alameda on November 21, 2025. Dkt. No. 1 ¶ 1. On December 15, 2025, Plaintiff filed a First Amended Complaint. *Id.* Defendant removed the case to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) on January 12, 2026, and filed this Motion to Dismiss on March 23, 2026. Dkt. No. 12.

## II. LEGAL STANDARD

A complaint can be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to meet the pleading standard laid out under Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At the pleading stage, those factual allegations are taken as true and construed "in the light most favorable to the nonmoving party." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). A complaint meets this plausibility standard when those presumed true factual allegations give rise to "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This is not a "probability requirement," but requires more than "sheer possibility." *Id*. 556. Rule 8(a)(2) demands more than a mere "formulaic recitation of the elements" or "labels and conclusions" but it does not demand "detailed factual allegations." *Twombly,* 550 U.S. at 555.

Claims grounded in fraud are subject to the pleading with particularity standard of Rule 9(b). Fed. R. Civ. P. 9(b).

## III. DISCUSSION

### A. Whether Plaintiff Meets the Rule 9(b) Standard

Fed. R. Civ. P. 9(b) requires that factual allegations for fraud-based claims must be "specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993). Besides its primary purpose of giving adequate notice, the heightened pleading standard also serves to deter frivolous claims, to protect the reputation of the accused, and to prevent plaintiffs from imposing costs on the court, the accused, and society without a factual

basis. *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009). To satisfy the standard, the complaint must list "the who, what, when, where, and how" of the alleged fraud, identify the allegedly false statement, and explain why it is false. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997) (cleaned up)).

In consumer label misrepresentation cases, Rule (9)(b) is typically satisfied when a plaintiff identifies the specific misrepresentation they relied upon, who was responsible for that misrepresentation, approximately when they encountered that misrepresentation, the location of that misrepresentation, and how that misrepresentation induced reasonable reliance. *Compare Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1195 (N.D. Cal. 2014) *with Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (holding Rule 9(b) was not satisfied when the plaintiff failed to provide what the television advertisements or other sales material he relied upon specifically stated). The label itself can be "the where" of the fraud in misleading label claims. *See e.g., Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011); *Oh v. Catalina Snacks, Inc.*, 764 F. Supp. 3d 903, 913 (C.D. Cal. 2025).

Here, Plaintiff satisfies Rule 9(b). The parties involved are clearly identified: the "who" is Defendant Once Upon A Farm, who sold the pouch, and Plaintiff Alexa Parashos, who purchased it. Compl. ¶¶ 5,7. The "particular misconduct" or "what" alleged is that Defendant sold a product represented as a "Fruit & Veggie Blend" that did not contain vegetables. *Id.* ¶ 1. The "when" is in or around November 2024 and on October 31, 2024, November 1, 2024, and December 15, 2024. *Id.* ¶¶ 5, 32. The "where" is the label itself; Plaintiff also alleges that she bought the product from Amazon and Target. *Id.* ¶ 98. The "how" is that Plaintiff saw the packaging and relied on the misrepresentations made thereon. *Id.* ¶ 5.

Defendant argues that Plaintiff fails to plead "the where" of the alleged fraud with sufficient particularity because she does not identify the specific Target at which she purchased the

product or clarify whether those purchases were in-store or online. Dkt. No. 12 (Mot.) at 7. However, Defendant does not submit that there are any differences between the label that appears in-store versus online. Defendant knows exactly what it is accused of: selling a specific product with a specific false and misleading label. Defendant fails to demonstrate it makes any material difference where the product was purchased. Accordingly, further detail is unnecessary to satisfy Rule 9(b). *See Retta v. Millennium Prods., Inc.*, 2015 WL 13917167, at *5 (C.D. Cal. Aug. 31, 2015) (explaining that "the most significant allegations with respect to Rule 9(b) are the specific content of the alleged misrepresentations" and not "the exact place or location where the misrepresentations took place"). Plaintiff has met the Rule 9(b) standard; dismissal is not merited on this ground.

As the complaint satisfies the pleading standard under Rule 9(b), it also fulfills the requisites of Rule 8(a)(2).

**B. Consumer Protection Claims**

Plaintiff brings claims under three consumer protection statutes, as well as common law fraud. The CLRA protects consumers from "unfair or deceptive acts or practices," including "representing that goods or services have … characteristics, ingredients, uses, benefits, or quantities that they do not have." Cal. Civ. Code §§ 1750. The FLA prohibits advertising which "is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code §§ 17500. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code §§ 17200. All three statutes are governed by the same "reasonable consumer" test, which asks whether Defendant's conduct would likely deceive a reasonable consumer. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Since a violation of one statute is typically a violation of the others, courts analyze them together. *See e.g.*, *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1063 (N.D. Cal. 2017).

Common law fraud is more stringent in requiring that the fraudulent deception must be actually false and the perpetrator must know it to be false. *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (Cal. 2009); *see also Nacarino v. KSF Acquisition Corp*., 642 F. Supp. 3d 1074, 1088-89 (N.D. Cal. 2022) (holding that a representation that "is not a false affirmation of fact, but rather an ambiguous description" is sufficient for consumer fraud statutes like the CLRA, FAL, and UCL but not common law fraud). To state a claim for common law fraud, a plaintiff must at minimum demonstrate a reasonable consumer would be misled. *See Davidson v. Sprout Foods Inc*., No. 22-CV-01050-RS, 2022 WL 2668481, at 4 (N.D. Cal. July 11, 2022) ("The CLRA, FAL, UCL 'fraudulent' prong, and common law fraud claims all require establishing that Defendant's practices would mislead a reasonable consumer") (citing *Hill v. Roll Int'l Corp*., 195 Cal. App. 4th 1295, 1304 (Cal. App. 2011) (dismissing CLRA, FAL, common law fraud, and UCL claims where "no reasonable consumer would be misled" by the defendant's representations))).

Plaintiff's claims under the CLRA, FAL and UCL, and for common law fraud accordingly depend on whether she satisfies the reasonable consumer test.

1. <u>The Reasonable Consumer Test</u>

Under the reasonable consumer test, courts ask whether members of the public, acting reasonably under the circumstances, is likely to be deceived by Defendant's representation. *Hadley*, 273 F. Supp. 3d at 1079; *Freeman v. Time, Inc.,* 68 F.3d 285, 289 (9th Cir.1995). This "likelihood to deceive" must be "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner" but rather "a probab[ility] that a significant portion of the general consuming public or of targeted consumers…could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. App. 2003). While there is no bright-line rule, the tendency to deceive must be significant—"the law does not concern itself with trifles." *Whiteside v. Kimberly Clark Corp*., 108 F.4th 771, 778 (9th Cir. 2024) (quoting *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 79 (Cal.

App. 2013)). Courts apply the test "from the vantage point of members of the targeted group," who may be "either more sophisticated or less sophisticated than the ordinary consumer." *Lavie*, 105 Cal. App. 4th at 512.

Courts first ask whether the representation on the label is literally false. If it is, it is misleading by definition. *Brady v. Bayer Corp*., 26 Cal. App. 5th 1156, 1167 (Cal. App. 2018). If not, courts ask whether the front label is "unambiguously deceptive." *McGinity v. Procter & Gamble Co*., 69 F.4th 1093, 1098 (9th Cir. 2023). If it is, the defendant cannot appeal to the back label to dispel that deception. *Id.* However, if the front label has "some ambiguity," courts consider "other information readily available to the consumer that could easily resolve the alleged ambiguity." *Moore v. Trader Joe's Co*., 4 F.4th 874, 882 (9th Cir. 2021).

2. <u>When Is the Reasonable Consumer Test Decided at the Pleading Stage?</u>

Whether a label passes the reasonable consumer test will usually be a question of fact not appropriate to decide on a motion to dismiss. *Williams*, 552 F.3d at 938. Because the claim that a reasonable consumer would be deceived only needs to be plausible to survive a motion to dismiss, dismissal should be granted only in the "rare situation" when "the advertisement itself ma[kes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id*. at 939. Dismissal is appropriate if the claim that a label is misleading "runs counter to ordinary common sense or the obvious nature of the product." *Brady*, 26 Cal. App. 5th at 1165. A plaintiff's own unreasonable assumptions about a product's label are not enough to create a plausible inference that a reasonable consumer would be misled. *Becerra v. Dr. Pepper/Seven Up., Inc*., 945 F.3d 1225, 1229–30 (9th Cir. 2019).

Although the standard for dismissal is high, "there has been an ever-increasing number of cases" in which dismissal has been granted at the pleading stage. *Culver v. Unilever United States, Inc*., No. CV 19-9263-GW-RAOX, 2021 WL 2943937, at *4 (C.D. Cal. June 14, 2021) (collecting cases); *see also Moore v. Trader Joe's Co*., 4 F.4th 874, 882 (9th Cir. 2021) (affirming

dismissal of food label false advertising claim at the pleading stage as not misleading as a matter of law); *McGinity v. P&G*, 69 F.4th 1093, 1100 (9th Cir. 2023) (same).

3. Literal Falsity

The Court first considers whether the statements on the label are true or false. A true statement may still be misleading in context, but a literally false statement fails the test automatically. *Brady*, 26 Cal. App. 5th at 1166-67. A label may be literally false either because it makes an explicit statement that is false or because it has necessary implications that are false. *Id.* at 1171 (citing *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 587 (3d Cir. 2002)). "[O]nly an *unambiguous* message can be literally false." *Novartis*, 290 F.3d at 587 (emphasis in original); *see also In-N-Out Burgers v. Smashburger Ip Holder LLC*, No. SACV 17-1474 JVS(DFMx), 2019 U.S. Dist. LEXIS 62743, at *19 (C.D. Cal. Feb. 6, 2019) ("Because the facial implication of such messages are not unambiguous, the Court declines to find literal falsity as a matter of law."). A "reasonable consumer" is expected to exercise common sense and interpret labels in light of common knowledge. *See e.g. Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW AGRX, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012) (holding dismissal is appropriate when "a claim alleges that a consumer will read a true statement on a package and will then disregard 'well-known facts of life' and assume things about the products other than what the statement actually says").

Plaintiff contends that the "Fruit & Veggie Blend" label here is literally false because "the product contains no vegetables." Compl. ¶ 1. Plaintiff maintains that an avocado is not a vegetable, relying on the FDA's classification of avocados as fruits. *Id.* ¶ 19.

But a survey of dictionary definitions, of which the Court takes judicial notice (*see e.g.*, *Anton Int'l v. Chunhong Zhang*, 2021 U.S. Dist. LEXIS 79709, at *4 (C.D. Cal. Apr. 26, 2021)), suggests that the question of whether an avocado is a vegetable is not so clear-cut in common parlance, notwithstanding the technical botanical definition of avocados as a fruit.

Scientifically, a fruit is defined as the "product of fertilization in a plant with its modified envelopes or appendages, specifically : the ripened ovary of a seed plant and its contents." [https://www.merriam-webster.com/dictionary/fruit] ](definition 1(d)) (accessed July 31, 2026). Avocados, which contain a pit like peaches and cherries, inarguably fall within this definition. In popular usage, however, the word "fruit" is understood to refer to "the usually edible reproductive body of a seed plant especially: one having a sweet pulp associated with the seed." [https://www.merriam-webster.com/dictionary/fruit] ](definition 1(b)) (accessed July 31, 2026). Avocados, like peppers, zucchini, and other botanical fruits, lack the "sweet pulp" that would place them firmly within the "fruit" category of popular usage.

Further, Merriam-Webster defines "vegetable" as "a usually herbaceous plant (such as the cabbage, bean, or potato) grown for an edible part that is usually eaten as part of a meal." *Vegetable*, Merriam-Webster, [https://www.merriam-webster.com/dictionary/vegetable](accessed July 31, 2026). In Collins, it is defined simply as "plants such as cabbages, potatoes, and onions that you can cook and eat." *Vegetable*, Collins, [https://www.collinsdictionary.com/dictionary/english/vegetable] (accessed July 31, 2026). Avocados, though botanically a fruit because they have seeds, fit within these broad definitions of vegetables, as the edible part of a plant that is eaten as part of a meal.

There is variance in the dictionary definitions of avocado. Merriam-Webster defines avocados as "a pulpy green- to purple-skinned nutty-flavored *fruit* of any of various tropical American trees (genus Persea especially P. americana) of the laurel family." *Avocado*, Merriam-Webster, [https://www.merriam-webster.com/dictionary/avocado] (accessed July 31, 2026) (emphasis added). Collins, on the other hand, defines avocados as "pear-shaped *vegetables*, with hard skins and large stones, which are usually eaten raw." *Avocado*, Collins, [https://www.collinsdictionary.com/dictionary/english/avocado] (accessed June 12, 2026) (emphasis added). The Supreme Court has observed in *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566

U.S. 560, 568 (2012) that the fact "a [dictionary] definition is broad enough to encompass one sense of a word does not establish that the word is ordinarily understood in that sense."

There is precedent holding that a plant may be botanically classed as a fruit but considered for certain legal purposes as a vegetable. Construing a tariff statute, the Supreme Court held that while "botanically speaking," tomatoes are fruits, in "the common language of the people," they are vegetables. *Nix v. Hedden*, 149 U.S. 304, 307 (1893). Because courts must apply the "ordinary meaning" of words, the Court looked to the way tomatoes are typically used and concluded that "like potatoes, carrots, parsnips, turnips, beets, cauliflower, cabbage, celery, and lettuce, [tomatoes are] usually served at dinner…and not, like fruits generally, as dessert." *Id*. Similarly, the Court held that while beans and walnuts might be seeds "in the language of botany or natural history," they are "not in commerce nor in common parlance," because "as an article of food on our tables…they are used as a vegetable." *Id.*; *see also Sonn v. Magone*, 159 U.S. 417, 421 (1895) ("The word 'vegetables'…in common parlance applies to articles of food. The predominant use of lentils and beans is for food, and, as so used, they are commonly called 'vegetables,' although they may be regarded botanically as seeds").

As with tomatoes, some portion of the consuming public perceives avocados as vegetables. Avocados, like tomatoes, are commonly served at meals as ingredients in *e.g.* burritos and sandwiches, and not, like fruits, as a sweet snack or a part of a dessert. And people eating chips and guacamole are not likely to think they are eating a fruit dip. At the very least, the status of avocados as a vegetable or fruit in a culinary context is reasonably susceptible to different interpretations. *See Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007) ("[I]f the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false.").

Unsurprisingly, a number of district courts in this circuit have treated avocados as vegetables in consumer protection cases. In *Henderson v. Gruma Corp.*, the district court granted

a motion to dismiss on the grounds that a label promising "Garden Vegetables" was confirmed by the inclusion of avocado powder, dehydrated onion, garlic powder, and bell pepper. No. CV 10-04173 AHM AJWX, 2011 WL 1362188, at *6 (C.D. Cal. Apr. 11, 2011). In another case, the court granted a motion to dismiss because a product labeled "made with avocado oil" and "79% vegetable oil spread" would not imply to a reasonable consumer that the product was made without other forms of vegetable oil. *Gates v. Upfield US Inc.*, No. 5:24-CV-00036-SVW-DTB, 2024 WL 3362857, at *1 (C.D. Cal. July 9, 2024) ("Avocado oil is a type of *vegetable* oil known for its healthy qualities") (emphasis added).

Given that avocados can be and have been considered vegetables in common parlance and have been treated as such for legal purposes, the label's reference to "veggie," where the product contains avocados, cannot be deemed "literally false" for purposes of the consumer laws at issue. A "reasonable consumer" is expected to exercise common sense and interpret labels in light of common knowledge. *See Red,* 2012 WL 5504011, at *3. As the above discussion demonstrates, the status of avocados is subject to ambiguity. *See In-N-Out Burgers*, 2019 U.S. Dist. LEXIS 62743, at *19 ("Because the facial implication of such messages are not unambiguous, the Court declines to find literal falsity as a matter of law."); *accord Novartis*, 290 F.3d at 587 ("[O]nly an unambiguous message can be literally false.").

Accordingly, the Court finds that labeling a blend that contains fruits and an avocado a "Fruit & Veggie Blend" is not literally false. *See Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819 SC, 2012 U.S. Dist. LEXIS 21446, at *17-18 (N.D. Cal. Feb. 21, 2012) (determining at the motion to dismiss stage that using the word "veggie" to describe a product containing a potato was not literally false).

4. <u>Misleading</u>

Plaintiff maintains that even if it is not "literally false" to describe a product containing an

avocado as containing a "veggie," doing so is nevertheless misleading. Plaintiff contends that a reasonable consumer would be misled by the label into thinking that the product contains "at least one ingredient that is actually a vegetable." Dkt. No. 16 (Opp.) at 11. Plaintiff does not elaborate further on how she defines the word "vegetable," but construed most broadly, Plaintiff alleges that the label, even if not considered expressly false, misleads a reasonable consumer into thinking that the product contains a vegetable other than an avocado.

It is undisputed that the back label lists five ingredients as making up the blend—pineapple, banana, apple, avocado and mint. The FDA requires that the ingredients list include every ingredient in declining order of prominence by weight. 21 C.F.R. § 101.4(a)(1). Reasonable consumers know that and expect an ingredient list to be exhaustive. After reading the ingredients list on the back label, no reasonable consumer could conclude the "Wild Rumpus Avocado 'Fruit & Veggie Blend" contains a vegetable other than an avocado.

The question is whether the reasonable consumer would consult the back label where they would learn the totality of ingredients contained.

The Ninth Circuit has recognized "the general principle that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Moore*, 4 F.4th 874 at 882 (quoting *Bell v. Publix Super Markets Inc*., 982 F.3d 468, 477 (7th Cir. 2020)). This may include the content of information on the front and back of the product. *See id. (quoting Bell*, 982 F.3d at 476) ("[T]he context of the entire packaging is relevant."); *see also Jonathan Chuang v. Dr. Pepper Snapple Grp., Inc.,* No. CV 17–01875–MWF (MRWX), 2017 WL 4286577, at *6 (C.D. Cal. Sept. 20, 2017) (holding snacks "Made with Real Fruits & Vegetable Juice" could not deceive a reasonable consumer when "the ingredients lists clearly demonstrate that the products contains more sugar than real fruit and vegetable juice").

As an exception to this general principle, when the front label is "unambiguously

deceptive" the defendant is "precluded from insisting that the back label be considered." *McGinity*, 69 F.4th at 1098. Reasonable consumers expect the back label to confirm any representations made on the front in greater detail, not to contradict them. *Williams*, 552 F.3d at 940. An advertiser "cannot take away in the back fine print what [they] gave on the front in large conspicuous print." *Brady,* 26 Cal. App. 5th at 1172. To avoid consideration of the back label, the plaintiff thus must "plausibly allege that the front label would be *unambiguously deceptive* to an ordinary consumer, such that the consumer would feel no need to look at the back label." *Whiteside v. Kimberly Clark Corp*., 108 F.4th 771, 780 (9th Cir. 2024) (emphasis added).

"Ambiguous" in this context does not simply mean "susceptible to more than one reasonable meaning." *Id.* at 782 (citing *Brady,* 26 Cal. App 5th at 1175). A front label may be deemed ambiguous when a reasonable consumer "would necessarily have required more information before concluding that the products' front labels were making a specific promise." *Id.* at 780; *accord Moore*, 4 F.4th at 882. A front label must have enough "inherent ambiguity" to put a reasonable consumer "on notice" about the need to seek more information. *Caldwell v. Nordic Nats., Inc*., 709 F. Supp. 3d 889, 889 (N.D. Cal. 2024).

In *Brady*, the defendant marketed vitamins under the brand name "One a Day" but on the back label recommended the consuming *two* vitamins a day. 26 Cal. App. 5th at 1161. The advertiser could not use the back label to turn one into two. The front label was unambiguously deceptive in suggesting one dose a day was enough – a suggestion squarely at odds with the back label.

*Williams v. Gerber Prods. Co*. is likewise illustrative. 552 F.3d 934 (9th Cir. 2008). *Williams* concerned "Fruit Juice Snacks" that contained no fruit juice other than white grape concentrate. *Id.* at 936. But the packaging for these "Fruit Juice Snacks" was decorated with images of oranges, peaches, strawberries, and cherries on the front label and it was described on the side panel as made "with real fruit juice and other all natural ingredients." *Id*. The Ninth

Circuit held that a reasonable consumer would expect the ingredient list to confirm what was written and shown elsewhere on the packaging. *Id.* The front label unambiguously suggested there was a variety of real fruit juices in the product when in fact the back label revealed there were not.

Importantly, a label is not unambiguously deceptive just because of a consumer's wishful thinking. *See Ebner*, 838 F.3d at 966 (holding that there was no act of deception "to be dispelled" when a lip balm was sold with heavy, oversized packaging that only allowed 75% of the product to be used because the label correctly listed the net weight and contained no affirmative misrepresentations); *Daniels v. Eagle Fam. Foods Grp., LLC*, 797 F. Supp. 3d 1154, 1163 (E.D. Cal. 2025) (holding that a product labeled "Made with Real Cheese" but containing less than 2% cheese was "certainly not deceptive in any literal or absolute sense").

In *Moore v. Trader Joe's Co.*, the Ninth Circuit found "some ambiguity" in the phrase "100% New Zealand Manuka Honey," 4 F.4th at 882; the court reasoned that the phrase could mean that all the honey was Manuka honey, that it was all from the Manuka flower, or that it was all from New Zealand. *Id.* There was enough inherent ambiguity on the front label that a reasonable consumer would "necessarily require more information," before arriving at the conclusion posited by Plaintiff—that the label promised honey 100% derived from Manuka flower nectar. *Id.* at 881-82. Given this ambiguity, the court went on to consider "other information readily available to the consumer [*i.e.* found on the back label] that could easily resolve the alleged ambiguity" and ultimately held that the label was not misleading to a reasonable consumer as a matter of law. *Id.* at 881, 882; *see also McGinity*, 69 F.4th at 1097 (finding "some ambiguity" in the phrase "Nature Fusion", which could "be interpreted to mean that the product contains a mixture of natural ingredients, …[or] that the product contains a mixture of both natural and synthetic ingredients").

In *Manuka*, the court also took into account the identity of the consumer. The court

framed its analysis in terms of a "reasonable honey consumer" and an "average consumer of Manuka honey." *Id.* at 883. In so doing, the court noted that Manuka honey was "a niche, specialty product," and that its purchasers "are undoubtedly more likely to exhibit a higher standard of care" than the purchasers of "low-priced, everyday items." *Id.* at 884.

Here, the product in question is labeled the Wild Rumpus Avocado "Fruit and Veggie Blend." In addition to the explicit reference to "Avocado" in the name of the product, the front label depicts multiple images of avocados, as well as bananas, apples, and pineapples. The foods pictured on the front label are all in fact ingredients in the blend.




Even drawing all inferences in Plaintiff's favor, there is at least "some ambiguity" in the front label. Avocados are often considered a vegetable in common parlance. And the pictorial illustration is of fruits and avocados; there is no depiction of a different vegetable. On the other hand, avocados are botanically speaking a fruit. There is thus an ambiguity as to whether the product contains vegetables other than avocados. Faced with this ambiguity, the reasonable consumer is expected to check the back label for complete information. *See Moore,* 882 4 F.4th at 882 ("[A]s a matter of law, other available information about Trader Joe's Manuka Honey would quickly dissuade a reasonable consumer from the belief that Trader Joe's Manuka Honey was derived from 100% Manuka flower nectar"); *see also McGinity*, 69 F.4th at 1099 ("The ingredients list, which McGinity alleges includes many ingredients that are synthetic and that a

reasonable consumer would not think are natural, clarifies that the rest of the ingredients are artificial and that the products thus contain both natural and synthetic ingredients"); *Daniels*, 797 F. Supp. 3d at 1163 ("Given that the Product's front packaging is not plausibly unambiguously deceptive, reversion to the packaging as a whole is appropriate."). Consulting the back label would confirm that the "veggie" in question is an avocado, nothing more. *See Williams*, 552 F.3d at 940-41 ("[R]easonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging").

The likelihood that a reasonable consumer would look to the back label is underscored by the fact that, as Plaintiff alleges, the product's "target audience" is "health-conscious parents." Compl. ¶ 28; *Lavie*, 105 Cal. App. 4th at 512 (reasonable consumer analysis is conducted "from the vantage point of members of the targeted group"). As Plaintiff alleges, "[s]uch consumers are willing to pay a premium to ensure that the food that they provide to their children is nutritious and includes vegetables." Compl. ¶ 24. Such a "health-conscious parent," prepared to pay a premium based on nutrition, would have particular reason to check the back label. Such a consumer would know that the phrase "Fruit & Veggie Blend" alone provides little information about the "nutrition" or "health" qualities of a product. Such a consumer, acting reasonably under the circumstances, would therefore naturally wonder about the identity of the fruits and vegetables contained within, and the possibility of additives. *See e.g. Henderson.,* 2011 WL 1362188, at *12 (holding that product marketed as "made with garden vegetables" was not misleading as a matter of law because it contained "avocado powder, dehydrated onion, garlic powder, and bell pepper" and did not promise a "specific *amount* of vegetables") (emphasis in original)). That consumer would also likely be concerned about nutritional values. Thus, a reasonable health-conscious parent trying "to ensure that the food that they provide to their children is nutritious" would "necessarily require more information" than the front label here, particularly given the ambiguity of whether an avocado is the "veggie" referenced in the front label. Compl. ¶ 24; *Whiteside*, 108

F.4th at 780. Consulting the back label would reveal the list of ingredients and dispel any assumption or impression that the product contained vegetables other than avocados.

In sum, the front label is sufficiently ambiguous to lead a reasonable consumer, particularly a reasonable health-conscious parent, to read the back label. The reasonable consumer then would not be misled by the term "Fruit & Veggie Blend." The Court accordingly **GRANTS** Defendant's motion to dismiss Plaintiff's claims under the CLRA, UCL, FAL, and common law fraud.

**C. Unjust Enrichment**

Plaintiff's remaining claim of Unjust Enrichment/Quasi Contract is derivative of her consumer protection claims. Because these fail, so too does the unjust enrichment claim. *See e.g.*, *Sloan v. Gen. Motors LLC*, 2017 WL 3283998, at *10 (N.D. Cal. Aug. 1, 2017) (dismissing unjust enrichment claim derivative of allegations that did not "rise to the level of plausibility"); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 849 (N.D. Cal. 2024) ("[B]ecause the plaintiffs have not stated a claim against Google for any unlawful conduct, they have also failed to state an unjust enrichment claim."). Defendant's motion to dismiss Plaintiff's unjust enrichment claim is **GRANTED**.

**D. Leave to Amend**

The Court denies leave to amend when further amendments would be futile. *Reddy v. Litton Indus.,* 912 F.2d 291, 296 (9th Cir. 1990). An amendment is futile when no additional facts could show that the label was misleading given the characteristics of the product in question. *See e.g. Husain v. Campbell Soup Co.,* 747 F. Supp. 3d 1265, 1275 (N.D. Cal. 2024), aff'd, No. 24-6041, 2025 WL 3539131 (9th Cir. Dec. 10, 2025). The Court has determined as a matter of law that the use of "veggie" was not literally false or so unambiguously deceptive that a reasonable

United States District Court
Northern District of California

consumer would not be expected to check the back label. There are no further facts plaintiff could allege that would plausibly show that a reasonable consumer could be deceived by this product. Dismissal is therefore without leave to amend.

## IV. CONCLUSION

Defendant's motion to dismiss is **GRANTED** on all counts without leave to amend.

**IT IS SO ORDERED**.

Dated: 8/7/2026

EDWARD M. CHEN
United States District Judge