United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXA PARASHOS,<br>Plaintiff,<br>v.<br>ONCE UPON A FARM,<br>Defendant. | Case No. 26-cv-00314-EMC<br>**ORDER RE MOTION TO DISMISS**<br>Docket No. 12 |

Plaintiff Alexa Parashos filed a putative class action against Defendant Once Upon A Farm, alleging violations of California consumer protection laws. The Court previously granted Defendant's Motion to Dismiss. Dkt. No. 26. The Court then issued an order of reconsideration, inviting the parties to submit additional briefing on whether dismissal was proper in light of the Ninth Circuit's holding in *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771 (9th Cir. 2024) and subsequent cases applying that holding. Dkt. No. 27.

Having considered the relevant caselaw and the parties' briefing, the Court amends its prior order and **VACATES** its prior dismissal. Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

The full factual background is recited in the Court's previous order. Dkt. No. 26 ("Order"). To summarize, Defendant sells organic food products for babies, including the Wild Rumpus Avocado "Fruit & Veggie Blend" pouch. Dkt. No. 1-1 ("FAC") ¶ 1. The front of the pouch displays images of avocados, apples, banana, and pineapples, and the back of the pouch lists its ingredients as pineapple, banana, apple, avocado and mint. *Id.*




*Figure 1: The front label, the back label, and a close-up of the ingredients list*

Plaintiff alleges that because the FDA classifies avocado as a fruit and mint as an herb, the "Fruit & Veggie Blend" contains no vegetables at all, and its packaging is therefore false and misleading. *Id.* ¶¶ 18–20. Plaintiff asserted the following causes of action:

(1) Violation of the California Consumer Legal Remedies Act (Civ. Code §§ 1750 et seq.)

(2) Violations of the Unfair Competition Law (Bus. & Prof. Code §§ 17200 et seq.)

(3) Violation of California's False Advertising Law (Bus. & Prof. Code §§ 17500)

(4) Intentional Misrepresentation (Fraud)

(5) Negligent Misrepresentation

(6) Unjust Enrichment/Quasi-Contract

Plaintiff initially filed her class action complaint in the Superior Court for the State of California, County of Alameda on November 21, 2025. Dkt. No. 1 ¶ 1. On December 15, 2025, Plaintiff filed a First Amended Complaint. *Id.* Defendant removed the case to federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) on January 12, 2026, and filed a Motion to Dismiss on March 23, 2026. Dkt. No. 12 ("Mot.").

On August 7, 2026, this Court granted the Motion to Dismiss without leave to amend, holding that Plaintiff's consumer protection claims failed as a matter of law because Defendant's use of the term "veggie" on the packaging "was not literally false or so unambiguously deceptive that a reasonable consumer would not be expected to check the back label." Order at 18. The Court issued an order of reconsideration on August 21, 2026, inviting the parties to submit additional briefing on whether dismissal was proper in light of the Ninth Circuit's holding in *Whiteside v. Kimberly Clark Corp.*, 108 F.4th 771 (9th Cir. 2024) and subsequent cases interpreting that holding. Dkt. No. 27.

## DISCUSSION

### A. Whether Plaintiff Meets the Rule 9(b) Standard

In the prior order, the Court held that the complaint satisfies the pleading standard under Rule 9(b) and fulfills the requisites of Rule 8(a)(2). Order at 6. The Court does not disturb that holding here.

### B. Consumer Protection Claims

#### 1. Plaintiff Has Plead a Viable Theory of Misrepresentation

Plaintiff's claims under the CLRA, FAL, and UCL, and for common law fraud, depend on

United States District Court
Northern District of California

whether she satisfies the reasonable consumer test. In the prior order, the Court considered the back label of the product when evaluating whether it would mislead a reasonable consumer, holding that the front label was ambiguous as to whether the product contains vegetables other than avocados. Order at 16. Upon consulting the back label, the consumer would learn there are no vegetables other than avocado. After reviewing the Ninth Circuit's clarified standard for whether a label is ambiguous for purposes of the reasonable consumer test, the Court now finds that the front label is not sufficiently ambiguous such that a reasonable consumer would be expected to consult the back label.

The Ninth Circuit's test for whether the front label is sufficiently ambiguous as to charge a consumer with examining a back label has evolved in recent years. In *McGinity v. Proctor & Gamble Co.*, 69 F.4th 1093, 1098 (9th Cir. 2023), the court held that a front label was ambiguous simply if it was susceptible to multiple meanings. There, the court held that a front label containing the words "Nature Fusion" was ambiguous because it could mean "a number of things: that the products are made with a mixture of natural and synthetic ingredients, that the products are made with a mixture of different natural ingredients, or something else entirely." *Id.* In those circumstances, the court held that a reasonable consumer would be charged with reading the back label. In *Whiteside*, however, the Ninth Circuit clarified that a front label is not sufficiently ambiguous for purposes of calling the back label into play simply because it is susceptible to two plausible meanings; a front label is sufficiently ambiguous only "when reasonable consumers would *necessarily* require more information before reasonably concluding that the label is making a particular representation." 108 F.4th at 781 (emphasis added). This would occur, for instance, where the term on the front label is essentially "devoid of [] concrete meaning" such that no reasonable consumer could infer a false message from the label alone. *Id.* at 780. If the front label is reasonably susceptible of conveying a false message, a reasonable consumer is not expected to look at the back label. *Id.* at 782.

Cases following and applying *Whiteside* confirm that a front label is *not* ambiguous for purposes of the reasonable consumer test where it communicates sufficient information for the consumer to draw a conclusion about what the label means. For instance, in *Panelli v. Target*

*Corp.*, 172 F.4th 1120, 1126 (9th Cir. 2026), the Ninth Circuit held that a label on a set of sheets that said, "800 Thread Count" and "100% cotton" was not sufficiently ambiguous because the thread count "purports to communicate an objective measurement of a physical aspect of the product." In other words, a reasonable consumer would "not need other information to determine what the claim was representing." *Id.* (citing *Whiteside*, 108 F.4th at 782). The court rejected the defendant's argument that because there are "multiple methods for thread counting, there [we]re necessarily multiple ways to interpret the [thread count] representation." *Id.* Because "consumers are likely to exhibit a low degree of care when purchasing low-priced, everyday items," *id.* (quoting *Moore v. Trader Joe's Co.*, 4 F.4th 874, 884 (9th Cir. 2021)), "a consumer is likely to take the label for what it says." *Panelli*, 172 F.4th at 1126.

Similarly, in *Slaten v. Christian Dior Perfumes, LLC*, 2025 WL 1840026, at *3 (N.D. Cal. July 3, 2025), the court applied *Whiteside* to hold that the front label of a makeup product was not ambiguous because a reasonable consumer could conclude that the label represented that the product's sunscreen protection lasted 24 hours. There, the front label stated, "24H wear radiant foundation" and "Broad spectrum SPF 15." *Slaten v. Christian Dior Perfumes, LLC*, 2024 WL 1421269, at *1 (N.D. Cal. Apr. 1, 2024). Prior to the Ninth Circuit's decision in *Whiteside*, the district court in *Slaten* held that the front label was ambiguous because "'24H' might mean both the cosmetic and sun protection benefits last 24 hours[,] [b]ut it could also plausibly mean only the cosmetic benefits last 24 hours." *Id.* at *3. Following *Whiteside*'s clarification, the court reversed itself, holding that the label was not ambiguous because "from the front label itself, reasonable consumers could conclude [d]efendant represented the product's sunscreen protection lasts 24 hours." 2025 WL 1840026, at *3.

In the instant case, this Court held that "there is at least 'some ambiguity' in the front label" of the Fruit & Veggie Blend because a reasonable consumer would not know for certain whether the product contained vegetables other than avocados based only on the front of the package. Order at 16 (quoting *Moore*, 4 F.4th at 882). Indeed, the front of the Fruit & Veggie Blend is "susceptible to two possible meanings." *Whiteside*, 108 F.4th at 781. A reasonable consumer could reasonably conclude, based on the front label, either that the product contains only



United States District Court
Northern District of California

those fruits and "veggies" portrayed on the front label (avocado, apple, banana, and pineapple), *or* that the product contains those ingredients along with additional vegetables. The ambiguity was accentuated because of the public's potential ambivalence about whether an avocado is a fruit or a veggie. But this is the type of "ambiguity" that *Whiteside* now rejects as insufficient to require consideration of the back label. The very fact that a reasonable consumer *could* reasonably conclude that the product contains a vegetable other than avocados is sufficient to state a claim of falsity without requiring consumers to read the back label. "Fruit & Veggie Blend" is not a "meaningless marketing term" that the consumer would necessarily need more information to understand. *Whiteside*, 108 F.4th at 782.

This holding is underscored by the Ninth Circuit's description of a "reasonable consumer" in *Whiteside* and *Panelli*. In its prior order, this Court held that a "health-conscious parent" such as Plaintiff "would have particular reason to check the back label." Order at 17. But in assessing whether the front label is ambiguous, the Ninth Circuit considers whether a reasonable consumer purchasing that product would have sufficient prior knowledge to understand that the product's apparent claims are impossible, not the consumer's desire for the product's claims to be true. In *Moore*, the Ninth Circuit held that reasonable honey consumers "would generally know that it is impossible to exercise complete control over where bees forage," such that they would not conclude from a label stating "100% New Zealand Manuka Honey" that the honey was derived entirely from Manuka flower nectar. 4 F.4th at 884. In addition, the court stated that consumers of Manuka honey, a "niche, specialty product," would likely "exhibit a higher standard of care" than other consumers. *Id.* However, the court did not rest its holding on that heightened standard of care, finding that "given the sheer implausibility of [the] [p]laintiff's alleged interpretation, a consumer of any level of sophistication" could not reasonably conclude that the product in fact contained honey derived entirely from Manuka flower nectar. *Id.*

Conversely, in *Panelli*, the Ninth Circuit held that a reasonable consumer shopping for bed sheets "is unlikely to be familiar with the intricacies of textile manufacturing," and thus would not have sufficient background knowledge to know that the claim of "800 thread count" and "100% cotton" was impossible. 172 F.4th at 1126. Rather, the reasonable consumer would "take the

label for what it says." *Id.* Notably, the court did not evaluate the importance of a high thread count to the consumer in evaluating whether that consumer would be expected to investigate the front label's claims further.

*Panelli*'s assessment of what the reasonable consumer would be expected to know comports with *Whiteside*. There, the Ninth Circuit held that "consumers of everyday items," such as baby wipes or bed sheets "are not expected to study labels with the same diligence as consumers of specialty products," such as Manuka honey. 108 F.4th at 782. Again, the court did not evaluate the importance to the consumer of buying baby wipes made without synthetic ingredients. Rather, the court assessed whether the baby wipes at issue were "a niche product marketed to a small, sophisticated class of customers with deep knowledge of how baby wipes are made." *Id.* Because they were not, the court held that a reasonable consumer – even one who cares about what "plant-based" means – could interpret the front label as unambiguously representing that the baby wipes do not contain synthetic ingredients. *Id.*

Here, Plaintiff says that the Fruit & Veggie Blend pouch has a "target audience of health-conscious parents." FAC ¶ 28. As Plaintiff alleges, "[s]uch consumers are willing to pay a premium to ensure that the food that they provide to their children is nutritious and includes vegetables." *Id.* ¶ 24. Though this Court in its prior order referred to such a health-conscious consumer, *Whiteside*, when viewed with other Ninth Circuit cases, makes clear that the putative sophistication of the reasonable consumer in relation to the product in question, not the likelihood that such consumer would be especially interested in consulting the back label, informs whether the consumer is likely to be deceived by the front label. Unlike in *Moore*, where a consumer of specialty products would know that it was impossible for the honey to come entirely from Manuka flower nectar and thus would not be deceived, here, regardless of any knowledge a reasonable, health-conscious consumer might have, they would not know from the front label that the "Fruit & Veggie Blend" does not contain a vegetable other than avocado.

Moreover, even if the Fruit & Veggie Blend is marketed to "health-conscious parents," FAC ¶ 28, it is still an "everyday item," *Whiteside*, 108 F.4th at 783, sold at grocery chain and large retail outlets, such as Target and Amazon. FAC ¶ 16. Parents shopping at these stores, even

if they are health-conscious, are buying a "mass-market product." *Brady v. Bayer Corp.*, 26 Cal. App. 4th 1156, 1177 n.20 (2018). And the pouches are not a "niche, specialty product." *Moore*, 4 F.4th at 884. At the time Plaintiff purchased them from Target, they cost between $2.38 and $2.79 per pouch. FAC ¶ 32. "A parent walking down the [] aisle in a grocery store, possibly with a child or two in tow," is "not likely to study with great diligence the contents of a [] product package." *Moore*, 4 F.4th at 884 (quoting *Danone, US, LLC v. Chobani, LLC*, 362 F. Supp. 3d 109, 123 (S.D.N.Y. 2019)). There is no substantial material difference between the parent consumer in *Whiteside* and the parent consumer here.

Accordingly, Plaintiff has plead a viable theory of misrepresentation. Defendant's motion to dismiss her claims on that basis is **DENIED**.

2. <u>Plaintiff Has Adequately Plead Reliance</u>

Defendant asserts that Plaintiff has not adequately plead reliance on allegedly misleading statements on Defendant's website because Plaintiff did not allege that she viewed Defendant's website when purchasing the Fruit & Veggie Blend pouch. Mot. at 25. It is true that the CLRA, UCL, and FAL require plaintiffs to prove reliance. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (holding that the UCL imposes an "actual reliance requirement"). However, Plaintiff's reliance on the statements on the product's packaging ("Fruit & Veggie Blend"), which she necessarily viewed when purchasing the product, and which she says she relied on, is sufficient.

Some district courts have required that plaintiffs in misrepresentation cases must allege "that they actually read the challenged representations." *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1120 (N.D. Cal. 2014). Here, Plaintiff alleges that she relied on the representation on the front of the pouch that it is a "Fruit & Veggie Blend." FAC ¶¶ 22–23. Even if she did not visit Defendant's website before purchasing the product from Target or Amazon, she necessarily read the statement on the front of the package. Thus, she has adequately alleged that she read the challenged statement.

Defendant argues that Plaintiff cannot bring claims based on statements on Defendant's website because she did not allege that she visited Defendant's website and relied on those statements when purchasing the products. Mot. at 25. But Plaintiff's claims are based on the

United States District Court
Northern District of California

representation on the front of the pouch that the product contains "Fruit" and "Veggie[s]." While the FAC also cites to statements made on Defendant's website, Plaintiff's claim does not depend on those statements. Rather, the statements on Defendant's website are "examples of advertisements similar to those [Plaintiff] saw" that "convey the core allegedly fraudulent message" that Defendant's product contains vegetables. *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Prac. Litig.*, 2012 WL 6062047, at *15 (C.D. Cal. Dec. 3, 2012).

Plaintiff has adequately alleged that she relied on Defendant's representation on the front of the product package that the product contained a "Fruit & Veggie Blend." Accordingly, Defendant's motion to dismiss her claims on that basis is **DENIED**.

**C. Nationwide Class Allegations**

Defendant moves to strike Plaintiff's nationwide class allegations, arguing that Plaintiff has failed to identify which state laws govern the putative nationwide class claims and that Plaintiff lacks standing to assert claims purportedly arising under the laws of the states in which she does not reside. Mot. at 27.

1. <u>California Law Governs Plaintiff's Common Law Claims</u>

It is true that courts in this district have dismissed common law claims in putative nationwide class actions where the plaintiff did not specify which state's laws would apply to those claims. *See, e.g.*, *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, 2018 WL 1576457, at *4 (N.D. Cal. Mar. 30, 2018) ("[D]ue to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal.") (quoting *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018)); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) ("[U]ntil Plaintiffs indicate which States' laws support their claim, the Court cannot assess whether the claim has been adequately plead."). In most of these cases, the common law claim was brought alongside claims under the consumer protection statutes of multiple states, so confusion about which state's law would apply to the common law claim was warranted. *See In re Samsung*, 2018 WL 1576457, at *1 (bringing causes of action for violations of California, Massachusetts, and Maryland consumer protection laws); *In re Static Random Access Memory*, 580 F. Supp. 2d at

899–900 (bringing causes of action for violations of "numerous" states' consumer protection and unfair competition laws).

In at least one case, a district court has dismissed common law claims for failure to allege which state's law governs even where the common law claim was brought alongside claims under only California law. *Romero v. Flowers Bakeries*, 2016 WL 469370, at *12 (N.D. Cal. Feb. 8, 2016). But here, although the FAC does not explicitly state that California law should be applied to Plaintiff's common law claims, it is obvious that this is the case. Plaintiff filed the case in California state court and claimed violations of only California consumer protection laws. In her Opposition, she states that she "pleaded California common-law causes of action." Dkt. No. 16 ("Opp'n) at 16. For the Court to dismiss based on the fact that the FAC – filed in California state court by a California Plaintiff against a California Defendant, asserting violations of California consumer protection laws – does not specify that it seeks to apply California law to the common-law claims therein would be an unreasonable formality and waste of resources, particularly in light of Plaintiff's affirmation that she is asserting only California common law claims. This case is distinguishable from *Romero* because there, the defendant was a Georgia corporation, 2016 WL 469370, at *1, while here Defendant has its principal place of business in California. FAC ¶ 7. In addition, in *Romero*, the plaintiff failed to clarify in its opposition to the motion to dismiss which state's laws would apply. Pl.'s Opp'n to Def.'s Mot. to Dismiss, *Romero*, No. 5:14-cv-05189-BLF (N.D. Cal. Feb. 8, 2016). As noted, here, Plaintiff confirms in her opposition to the motion to dismiss that she pleaded "California common-law causes of action." Opp'n at 29.

Thus, because it is clear that Plaintiff intends for California law to apply to all her claims, including common law claims, the Court **DENIES** Defendant's motion to dismiss Plaintiff's common-law claims on this basis. To the extent Plaintiff seeks to raise her common-law claims under the laws of any other state, she has disavowed such claims. In any event, there would be a substantial question about her standing to do so. *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908–09 (N.D. Cal. 2019) ("Courts in the Ninth Circuit have consistently held that a plaintiff in a putative class action lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured.").

2. Whether California Law May Apply to the Nationwide Class

Defendant argues that "[a]s a California resident, Plaintiff lacks any basis to invoke the laws of intentional misrepresentation, negligent misrepresentation, and unjust enrichment of the other forty-nine states." Mot. at 27. But as discussed above, Plaintiff invokes only California law, and to the extent she invokes other states' laws, those claims are dismissed. Defendant also argues that the Court may not be able to apply California law to all class members' claims due to differences between state laws. Mot. at 27–28; Dkt. No. 20 ("Reply") at 18–19. This raises the question of whether the instant motion is the appropriate vehicle to resolve this question.

Courts in the Ninth Circuit are split "as to whether a motion to strike class allegations may be entertained at the motion to dismiss stage." *Ogola v. Chevron Corp.*, 2014 WL 4145408, at *2 (N.D. Cal. Aug. 21, 2014) (collecting cases); *see also Effinger v. Ancient Organics LLC*, 657 F. Supp. 3d 1290, 1300–02 (N.D. Cal. 2023) ("there is no 'rigid rule that precludes class certification from being addressed' . . . [but] prudential concerns . . . led the Court to" do so.) (quoting *In re Carrier IQ*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015)).

Here, there are prudential concerns that counsel toward assessing viability of the nationwide class at the pleading stage. Because Plaintiff's claims arise under state law and both she and Defendant are California citizens, federal subject matter jurisdiction can only exist if there are out-of-state putative class members under CAFA. *See* 28 U.S.C. § 1332(d)(2)(A) (allowing for federal jurisdiction where "any member of a class of plaintiffs is a citizen of a State different from any defendant"). *See, e.g.*, *Brown .v Janus of Santa Cruz*, 2021 WL 3413349, at *4 (N.D. Cal. Aug. 5, 2021) (minimal diversity met where three unnamed putative class members were not California citizens); *Stern v. RMG Sunset, Inc.*, 2018 WL 2296787, at *7 (S.D. Cal. May 21, 2018) (minimal diversity met where named plaintiff and defendant were California citizens but class was nationwide); *Swearingen v. Yucatan Foods, L.P.*, 24 F. Supp. 3d 889, 895 (N.D. Cal. 2014), reconsidered on other grounds (minimal diversity met where proposed nationwide class included class members from states other than those in which defendant resided); *Lowery v. Ala Power Co.*, F.3d 1184, 1193 n.24 (11th Cir. 2007) ("The new § 1332(d) replaces [the] ... 'complete diversity'

United States District Court
Northern District of California

requirement with a 'minimal diversity' requirement under which, for purposes of establishing jurisdiction, only one member of the plaintiff class—named or unnamed—must be diverse from any one defendant."). Here, the proposed class includes "all United States residents" who purchased the Fruit & Veggie Blend pouch. FAC ¶ 35. In Defendant's notice of removal, Defendant notes that the product "is available for purchase in all 50 states." Dkt. No. 1 ¶ 23. "As such, at least one member of the putative class is a citizen of a state other than California and Delaware, thereby satisfying minimal diversity for purposes of CAFA jurisdiction." *Id.* If the nationwide class cannot proceed, those out-of-state putative class members would cease to provide the minimum diversity required for this Court's jurisdiction. *See McFall v. Perrigo Co.*, 2021 WL 2327936, at *18 (C.D. Cal. Apr. 15, 2021) ("Evaluating the sufficiency of nationwide claims at the pleading stage can narrow the scope of issues and may even reveal a lack of subject matter jurisdiction if a class action complaint relied on the nationwide class claims to meet the jurisdictional minimum to establish jurisdiction under the Class Action Fairness Act."). Accordingly, the Court considers, at least on a prima facie basis, the viability of applying California law to the nationwide class at this stage.

There are serious questions about whether a nationwide class can proceed wholly under California law. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). In *Mazza*, the Ninth Circuit considered the propriety of certifying a nationwide class, alleging claims under California's consumer protection laws. 666 F.3d at 589. First, the court found that the federal court sitting in diversity "looks to the forum state's choice of law rules to determine the controlling substantive law." *Id.* Applying California's choice of law rules, the *Mazza* court explained that the class action proponent bears the initial burden of showing whether California has "significant contact or significant aggregations of contacts" to the claims of each class member. *Id.* On that question, the court explained, whether a nonresident plaintiff can assert a claim under California law is, at bottom, a question whether California has sufficient significant contacts with the plaintiff's claims. *Id.* at 589–90. Once that burden is met, the burden shifts to the defendant to demonstrate that "foreign law, rather than California law, should apply to

United States District Court
Northern District of California

class claims." *Id.* at 590. This choice of law analysis depends on whether there are "material differences" between California law and the laws of other states, and, if so, which state's interest in applying its law is "predominant." *Id.* at 591, 593.

Courts applying *Mazza* have determined that where the defendant is incorporated and headquartered in California, this is sufficient to show significant contact or aggregation of contacts with the claims of out-of-state class members to shift the burden to defendant to demonstrate that other state laws apply. *Caldwell v. Nordic Naturals, Inc.*, 709 F. Supp. 3d 889, 912 (N.D. Cal. 2024) (denying motion to dismiss as to nationwide claims where plaintiff alleged defendant had its principal place of business in California); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159-60 (C.D. Cal. 2012) (same, where plaintiff alleged defendants were "headquartered in Los Angeles, California"); *see also Thomas v. Dun & Bradstreet Credibility Corp.*, 100 F. Supp. 3d 937, 946 (C.D. Cal. 2015) (denying motion to dismiss where "Plaintiff [] alleges that Defendant maintains a principal place of business in California"). Here, Plaintiff alleges that Defendant is a corporation that maintains its principal place of business in California. FAC ¶ 7. Accordingly, Plaintiff has set forth sufficient allegations to shift the burden back to Defendant to show why the choice-of-law analysis favors the application of foreign law to non-California consumers. *See Mazza*, 666 F.3d at 590; *Forcellati*, 876 F. Supp. 2d at 1159–60; *Thomas*, 100 F. Supp. 3d at 946.

The first question under California choice of law analysis is whether there are material differences between California law and those of other states. Defendant cites *Krantz v. Old Copper Co., Inc.*, 794 F. Supp. 3d 724, 748 (C.D. Cal. 2025) as its sole support for its contention that there are such differences. That case held that "[p]laintiffs could not succeed in representing a nationwide class on their consumer protection, unjust enrichment, fraud, and negligent misrepresentation claims" due to the "material differences" in state laws. *Id.* But Defendant here does not provide any analysis to demonstrate why these differences are material in *this* case. As explained in *Forcellati*, 876 F. Supp. 2d at 1159, "*Mazza* did not purport to hold that nationwide classes are, as a matter of law, uncertifiable under California's consumer protection laws . . . the [*Mazza*] court made clear that its holding was cabined to the facts before it." Whether any differences between state laws are material depends on the facts of each case – for instance, if

some states' consumer protection laws have a scienter requirement and others do not, that difference is only material where the scienter requirement is not met on the fact of the case. *See Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013) (*Mazza* "depended heavily on a detailed choice-of-law analysis that compared how various states' consumer protection laws ***applied to the facts of the plaintiffs' claims***.") (emphasis added). While *Mazza* held that the nationwide class in that case could not proceed, the choice-of-law analysis is "case-specific" and depends on the specific facts of each case. *Forcellati*, 876 F. Supp. 2d at 1159. Defendant has not, at this juncture, met its burden of showing why foreign law must apply to non-California class members. Accordingly, Defendant's motion to strike the nationwide class allegations at this stage is **DENIED without prejudice**.

**D. Claims for Equitable Relief**

Defendant moves to dismiss Plaintiff's claims for equitable relief, arguing that Plaintiff has not shown that she lacks an adequate legal remedy and that Plaintiff lacks standing to seek injunctive relief. Defendant also argues that Plaintiff's unjust enrichment claim fails as duplicative of her claims for restitution and on its merits.

1. Adequate Remedy at Law

Defendant argues that Plaintiff's claims for monetary equitable relief in the form of restitution and disgorgement related to her CLRA, UCL, and FAL causes of action and her claim for unjust enrichment should be dismissed because Plaintiff has not alleged that she lacks an adequate legal remedy. Mot. at 28.

In *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837–38 (9th Cir. 2020), a consumer brought a putative class action against a company that marketed and sold a liquid dietary supplement, asserting damages and equitable restitution claims for false or misleading advertising in violation of the UCL and CLRA, based on allegations that the company's advertisements and packages encouraging consumers to use the supplement to help keep their joints flexible and lubricated impliedly promoted the supplement as a remedy for pain and stiffness in arthritic joints. Following the consumer's amendment of the complaint to drop the CLRA damages claim on the eve of trial, the district court granted the company's motion to dismiss for failure to state a



United States District Court
Northern District of California

claim and denied leave to amend the complaint to reallege a CLRA damages claim. *Id.* at 838.

On appeal, the Ninth Cicuit held that the consumer was not entitled to equitable restitution for violation of the UCL and CLRA because the consumer failed to establish that she lacked an adequate remedy at law for false or misleading advertisement claims against the company. *Id.* at 844. The Ninth Circuit noted that the consumer conceded that she sought "the same sum in equitable restitution as 'a full refund of the purchase price' – $32,000,00 – as she requested in damages to compensate her for the same past harm." *Id.* The Ninth Circuit concluded that the consumer failed to "explain how the same amount of money for the exact same harm is inadequate or incomplete . . . ." *Id.*

*Sonner* teaches that a plaintiff, on the eve of trial, cannot create an inadequacy of a legal remedy by eliminating its availability by taking volitional action. Similarly, "where the plaintiff had an adequate legal remedy but forsook it (e.g., by failure to abide by the statute of limitations), the plaintiff cannot be said to have been without an adequate legal remedy." *Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 895 (N.D. Cal. 2022). But district courts in the Ninth Circuit have held that "*Sonner* has limited applicability to the pleading stage" and does not prevent plaintiffs from alleging claims in the alternative. *Jeong v. Nexo Fin. LLC*, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022). *See also Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1114 (N.D. Cal. 2020) ("Plaintiff may allege claims in the alternative at the pleading stage. The equitable remedies afforded by the UCL and CLRA are expressly stated to be in addition to other available remedies at law."); *Sagastume v. Psychemedics Corp.*, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) ("*Sonner* does not hold that plaintiffs may not seek alternative remedies at the pleading stage."); *Warren v. Whole Foods Mkt. Cal., Inc.*, 2022 WL 2644103, at *9 (N.D. Cal. July 8, 2022) (Chen, J.) ("Notably, the Federal Rules of Civil Procedure allow for pleading in the alternative. Specifically, Rule 8 states that a claim for relief must contain 'a demand for relief sought, *which may include relief in the alternative or different types of relief.*'") (quoting Fed. R. Civ. P. 8(a)(3)).

Here, Plaintiff's primary argument is that the damages she seeks "may prove narrower than full restitution of the money Defendant wrongfully obtained or disgorgement of the profits

attributable to the challenged conduct." Opp'n at 26. Arguably, Defendant may have been unjustly enriched by an amount that is greater than what P may get as damages.

Accordingly, the Court finds, at this juncture, that Plaintiff is not barred by *Sonner* from pursuing alternative remedies at this early stage of the suit, and her "entitlement to seek [] equitably remed[ies] of restitution [and disgorgement] may be revisited at a later stage." *Warren*, 2022 WL 2644103, at *9 (quoting *Nacarino*, 668 F. Supp. 3d at 897). Defendant's motion to dismiss Plaintiff's claims for monetary equitable relief is **DENIED without prejudice**.

2. Standing to Seek Injunctive Relief

Plaintiff seeks an order enjoining Defendant's allegedly deceptive practices. FAC ¶¶ 4, 74, 81, 91. Typically, to have injunctive standing in a consumer case, a plaintiff must make a plausible showing that she will again be subjected to the alleged wrongdoing through either (1) "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or (2) "the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018). Under *Davidson*, a plaintiff is "still required to allege that she would like to purchase the defendant's product in the future." *Julian v. TTE Tech., Inc.*, 2020 WL 6743912, at *8 (N.D. Cal. Nov. 17, 2020). In *Julian*, this Court dismissed with leave to amend on standing for injunctive relief where the plaintiffs failed to allege that they would be interested in purchasing or would purchase the defendant's product in the future. *Id.*; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (requiring a "real and immediate threat" of future injury for injunctive standing). Moreover, if Plaintiff lacks standing herself, she does not have standing as class representative to obtain injunctive relief for the class.

Here, Plaintiff did not allege that she would be interested in purchasing or would purchase the Fruit &Veggie Blend pouch again. She says that she purchased the product "on numerous different occasions," including three dates in 2024. FAC ¶¶ 32, 98. She says that she would have paid less for the product or would not have purchased it at all, if she had known that it does not

United States District Court
Northern District of California

contain a vegetable other than avocado. *Id.* ¶ 34. And she says that "Plaintiff and the Class are likely to continue to be damaged by Defendant's deceptive trade practices." *Id.* ¶ 74. Plaintiff contends that these statements "support a straightforward inference" that she "remains in the market for this category of children's food." Opp'n at 27. But that is not enough. *See Nacarino v. Chobani, LLC*, 668 F. Supp. 3d 881, 899 (2022) (finding standing where the plaintiff alleged that "she would purchase the Product again in the future if the Product were reformulated . . . *or* if the labelling complied with federal and state regulations"); *cf. Lanovaz v. Twinings N. Am.*, 726 Fed. Appx. 590, 591 (9th Cir. 2018) (finding that a plaintiff lacked standing where she only alleged that she would "consider buying" a product again). She must establish her own standing.

Even if Plaintiff had alleged that she would like to purchase this product again, the Court is skeptical that she would have standing for injunctive relief. A foundational prerequisite of standing is that the plaintiff must face the threat of suffering similar harm in the future. *Lyons*, 461 U.S. at 111. Where a plaintiff would not need to purchase the product in order to confirm the veracity and meaning of its label, this Court has previously held that she lacked standing. *See Caldwell v. Nordic Naturals, Inc.*, 709 F. Supp. 3d 889, 909–11 (N.D. Cal. 2024). In *Caldwell*, the plaintiff alleged that the labeling of fish oil supplements was deceptive because it said "2X" on the label but did not actually contain twice the omega-3 as the regular version of the product. *Id.* at 895–96. This Court held that she lacked standing to pursue injunctive relief because the plaintiff was then aware of the amount of omaga-3 in the product so was not likely to purchase it again thinking "the product contains double the amount of omega as the regular product." *Id.* at 910. "[A]rmed with [this] knowledge, Plaintiff [could] take the step of comparing th[e] product with the original product." *Id.* The Court distinguished the case from *Davidson*, in which the plaintiff "would have no way of determining whether the representation" on the package "remained false – absent purchasing the product and trying [] it again." *Id.* (citing *Davidson*, 889 F.3d at 970–71). Other courts in this district have drawn the same distinction, finding that plaintiffs lacks standing for injunctive relief "where there is an accurate, quantitative representation on the product label that dispels any otherwise misleading representations." *Sonrode v. Hain Celestial Grp., Inc.*, 2026 WL 2078134, at *2 (N.D. Cal. Feb. 23, 2026); *see also*

*Squeo v. Campbell Soup Co.*, 2024 WL 4557680, at *8 (N.D. Cal. Oct. 22, 2024) (plaintiffs could check the ingredient list for citric acid before buying again).

Here, Plaintiff is now aware that the Wild Rumpus Avocado "Fruit & Veggie Blend" pouch does not contain a vegetable other than avocado. She knows the ingredients are listed on the back label. There is no dispute that the list is accurate, so Plaintiff need only look to the back label to determine if the product contains an ingredient that Plaintiff would consider a vegetable. As Plaintiff is now armed with this information, it "strains credibility to say that Plaintiff will purchase the [Fruit & Veggie Blend pouch] again . . . while thinking the product contains" a vegetable other than avocado. *Caldwell*, 709 F. Supp. 3d at 910.

Accordingly, the Court **STRIKES** Plaintiff's request for injunctive relief. Although the Court will grant leave to amend, it is difficult to discern how Plaintiff can amend the complaint to establish standing for injunctive relief with respect to the particular product in question in this Court. The Court expresses no opinion as to Plaintiff's ability to pursue her claims in state court.

3. <u>Unjust Enrichment/Quasi-Contract Claim</u>

Defendant argues that Plaintiff's unjust enrichment/quasi-contract claim should be dismissed because it is duplicative of her claims for restitution under the CLRA, UCL, and FAL, and because she does not adequately allege that Defendant was "unjustly" enriched. Mot. at 30.

The Ninth Circuit has held that "even if a cause of action [for unjust enrichment] is duplicative of or superfluous to other claims, this is not grounds for dismissal." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). *See also In re Safeway Tuna Cases*, 2016 WL 3743364, at *2 (N.D. Cal. July 13, 2016) (denying a motion to dismiss unjust enrichment claim where it was duplicative of other claims); *Romero v. Flowers Bakeries LLC*, 2015 WL 2125004, at *9 (N.D. Cal. May 6, 2015) (permitting an unjust enrichment claim even though it might be duplicative of the plaintiff's other claims under the CLRA, UCL, and FAL). The cases Defendant cites that purport to hold otherwise were decided (or rely exclusively on cases decided) before the Ninth Circuit's decision in *Astiana* rejecting the argument that unjust enrichment claims must be dismissed as duplicative of other claims. *See, e.g.*, *In re Hard Disk Suspension Assemblies Antitrust Litig.*, 2021 WL 4306018, at *24 (N.D. Cal. 2021) (relying on *In re Apple &*



United States District Court
Northern District of California

*AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011)). We are bound by the Ninth Circuit's holding in *Astiana* and do not dismiss the claim as duplicative.

The Ninth Circuit and the California Supreme Court have allowed claims for unjust enrichment to proceed as quasi-contract claims seeking restitution. *See ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016); *see also Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 872 (2014) (construing a cause of action labeled "unjust enrichment" as a quasi-contract claim seeking restitution). Here, Plaintiff brings a quasi-contract claim, alleging that Defendant has been unjustly enriched by its allegedly misleading labeling. FAC ¶¶ 114–19. "The elements of a cause of action for unjust enrichment are simply stated as 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Prof. Tax App. v. Kennedy-Wilson Holdings, Inc.*, 29 Cal App. 5th 230, 238 (2018) (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)). A statement by a plaintiff that she was "enticed" to purchase a product through "false and misleading" labeling, and that the defendant was "unjustly enriched" as a result, is sufficient to state a quasi-contract cause of action. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Where a plaintiff has not purchased a product directly from the defendant, there is no express contract that governs the purchase as between the two parties, and a quasi-contract claim is available. *See Sneed v. Proctor & Gamble Co.*, 779 F.Supp.3d 1025 (N.D. Cal. 2025) (quasi-contract claim not barred where no express contract governed subject matter); *Shin v. Sanyo Foods Corp. of Am.*, 2024 WL 4467603, at *4 (C.D. Cal. Aug. 13, 2024) (same where plaintiff did not purchase the goods in question directly from defendant); *McVay v. Kroger Co.*, 2026 WL 713006, at *5 (C.D. Cal. Feb. 3, 2026) (same). Plaintiff alleges that she bought the Fruit & Veggie Blend pouch from Amazon and Target, not directly from Defendant. Here, Plaintiff alleged that she was "induced" to purchase Defendant's product through the allegedly "misleading and deceptive representations about the product," and that Defendant "unjustly" obtained a benefit from Plaintiff. FAC ¶¶ 116–17; *see Astiana*, 783 F.3d at 762 (quasi-contract claim adequately alleged where the plaintiff alleged that she was "enticed" to purchase a product through "false and misleading" labeling, and that the defendant was "unjustly enriched" as a result.

Accordingly, Defendant's motion to dismiss Plaintiff's unjust enrichment/quasi-contract claim is **DENIED**.

**E. Punitive Damages**

Defendant seeks to strike Plaintiff's claim for punitive damages, arguing that Plaintiff has not plead facts sufficient to support such a claim. Punitive damages are available under the CLRA where there is "oppression, fraud, or malice on the part of the defendant and, if the defendant is a company, the misconduct [was] engaged in by an officer, director, or managing agent." *Gradney v. Polar Beverages*, 797 F. Supp. 3d 1016, 1034 (N.D. Cal. 2025); *see also* Cal. Civ. Code §§ 1780(a)(4), 3294.

Plaintiff has alleged fraud throughout her complaint. FAC ¶¶ 63, 65, 94. She alleges that Defendant "knew" that In addition, she alleged that she notified Defendant by certified mail of the alleged CLRA violations, based on the purportedly false and misleading labeling, but Defendant did not remedy them. *Id.* ¶ 57. While Plaintiff did not specifically allege that Defendant's officers or directors engaged in the allegedly unlawful conduct, but it is a "fair inference that a 'higher up' in [the company] had to approve the ["Fruit & Veggie Blend"] label in order for the label to be placed on the [] product." *Gradney*, 797 F. Supp. 3d at 1034. Courts properly decline to strike punitive damages at the pleading stage under these circumstances. *See Gradney*, 797 F. Supp. 3d at 1035; *see also Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1108 (S.D. Cal. 2015) (declining to strike punitive damages where plaintiff alleged that defendant was aware of the alleged CLRA violations but did not remedy them).

Accordingly, Defendant's motion to strike punitive damages is **DENIED without prejudice**.

## CONCLUSION

Because a reasonable consumer could reasonably conclude based on the front of the Fruit & Veggie Blend that it contains a vegetable other than avocado, the front label is not ambiguous and we need not consider the back label in applying the reasonable consumer standard. Thus, Plaintiff has plausibly plead that the front label is misleading. The Court **VACATES** its prior

United States District Court
Northern District of California

dismissal. For the reasons explained above, Defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. The Court **STRIKES** Plaintiff's claim for injunctive relief without leave to amend, but Plaintiff's other claims survive.

**IT IS SO ORDERED**.

Dated: November 16, 2026

EDWARD M. CHEN
United States District Judge